UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAMON HOWZE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 2:10-cv-00492-DBH |
| | ) |
| PATRICIA BARNHART, | ) |
| | ) |
| Respondent | ) |

# AMENDED[1] RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION

Damon Howze is before this court advancing a 28 U.S.C. § 2254 petition. Howze was convicted of gross sexual assault in the State of Maine on December 20, 2007, and was thereafter sentenced to fourteen years with all but seven years suspended. Howze presses four Sixth Amendment ineffective assistance of counsel claims in his 28 U.S.C. § 2254 petition. Answering the complaint the State concedes that the petition is timely and that the four grounds were fully exhausted in state courts.

Howze was tried together with a co-defendant for charges of sexual assault on the same eighteen-year-old victim in the co-defendant's apartment.[2] The narrative advanced by the State at trial was that the alleged assaults took place back-to-back in the early morning hours after a

---

[1] The only amendment to this recommended decision is the case number in the heading from: 1:10-cv-491-JAW to the correct case number of: 2:10-cv-00492-DBH.

[2] At the joint trial there was testimony that described this person's alleged assault on the victim immediately prior to Howze's assault (see, e.g., Trial Tr. at 73-76, State App. A); that individual was adjudged not guilty of the offense and Howze was convicted (id. at 525). If you read the trial transcripts this difference in verdicts is a little perplexing because the conviction of Howze obviously was based on the victim's story and she certainly connected the two assaults in her version of events so, on the one hand, the jury did believe her and, on the other hand, it did not sufficiently credit the victim's testimony in the framework of a beyond the reasonable doubt deliberation. Whatever may have been the psychology of this 'split verdict,' the evidence was that the DNA of Howze's co-defendant was never found either in the victim's medical test or the evidence collected at the scene. It is also the case that the co-defendant testified at trial and Howze did not. The testimony the co-defendant gave was that he had absolutely no sexual contact with this victim. (See Trial Tr. at 386-423.)

night in which most in attendance were intoxicated and the victim herself had consumed at a minimum five double shots of undiluted rum and became so intoxicated she was vomiting and passing out. Howze initially denied any contact with the victim when he was interviewed by the police; however forensics done as a consequence of the victim's report of the incident linked Howze's DNA to the victim. As a consequence, despite Howze's initial disclaimer of any contact, the defense theory was that the sexual contact was consensual.

For the reasons that follow, I recommend that the Court deny Howze 28 U.S.C. § 2254 relief because the state court's rejection of his four claims was not an unreasonable application of the United States Supreme Court case, Strickland v. Washington, 466 U.S. 668 (1984).

**Discussion**

A.  *Standard for 28 U.S.C. § 2254 Review of State Court Strickland Determinations*

"To succeed on a claim of ineffective assistance of counsel" in the context of 28 U.S.C. §2254 review, Howze "must show both deficient performance by counsel and resulting prejudice." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (citing Strickland, 466 U.S. at 687). The deficient performance aspect of the § 2254 burden requires Howze to demonstrate that counsel's conduct in his case "'fell below an objective standard of reasonableness.'" Id. (quoting Strickland, 466 U.S. at 688). Even without the overlay of 28 U.S.C. § 2254(d) deference, this standard is highly tolerant of defense counsel's strategic choices. "There is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" and Howze carries the burden of defeating the presumption that the decisions of his attorney of which he complains might be a sound trial strategy given professional norms. Id. To prevail on a particular claim Howze must convince the reviewing court that "'counsel's choice was so patently unreasonable that no competent attorney would have made it.'" Id. (quoting

2

Knight v. Spencer, 447 F.3d 6, 15 (1st Cir.2006)).  What is more, for Howze to satisfy the Strickland "prejudice" prong he must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Porter v. McCollum, 558 U.S. __, 130 S.Ct. 447, 453 (2009) (per curiam, quoting Strickland, 466 U.S. at 694). Howze's failure "to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong." Id. (citing Strickland, 466 U.S. at 697.)

And, as if that burden was not sufficiently hard to surmount, this is a 28 U.S.C. § 2254 proceeding.  As a consequence of the collateral nature of this proceeding, Howze's petition cannot be granted with respect to his four claims that were "adjudicated on the merits in State court proceedings unless the adjudication" of one or more of his claims:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

The First Circuit recently summarized this standard in the context of Strickland and its interlink with the circumspection of 28 U.S.C. § 2254 review; Shuman v. Spencer explains the extreme deference owed state court determinations under the restrictions on federal habeas relief apropos state court convictions as follows:

> When applying § 2254(d)(1) or (2), a decision can still be "reasonable" even if the reviewing court "concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, --- U.S. ----, ----, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted and emphasis added). "[U]nreasonable" under this section of the AEDPA means something greater than incorrect or erroneous. See id. Finally, even if a state court's error rises to the level of being "unreasonable," habeas relief remains unavailable unless the petitioner can also show that the error "had a

3

'substantial and injurious effect or influence in determining the jury's verdict.'" Delaney v. Bartee, 522 F.3d 100, 105 (1st Cir.2008) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)).

__ F.3d __, __, 2011 WL 631591, 4 (1st Cir Feb. 24, 2011).

With respect to Strickland in a collateral proceeding challenging a head-on state-court Strickland determination, Shuman acknowledged: "Of course, 'to establish constitutionally ineffective assistance of counsel as a ground for federal habeas relief, the petitioner bears a doubly heavy burden.'" Id. at 5 (quoting Yeboah-Sefah v. Ficco, 556 F.3d S53, 70 (1st Cir. 2009)). The Panel observed, in effect, that it is hard enough to succeed with a Sixth Amendment claim before you get to the next layer of review in a § 2254 context. Id.

The First Circuit Panel relied on the newly inked Harrington v. Richter, a case in which the Supreme Court reflected:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams [v. Taylor,] [529 U.S. 362,] 410 [(200)]. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ----, ----, 129 S.Ct. 1411, 1413-14 (2009) (internal quotation marks omitted).

__ U.S. __, __, 131 S. Ct. 770, 785 -86 (2011).

4

In Howze's case, the post-conviction court expressly cited Strickland in its discussion of Howze's claims. (Post-conviction Dec. & J. at 2.) See Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Pike v. Guarino, 492 F.3d 61, 71 (1st Cir. 2007); Jackson v. Coalter, 337 F.3d 74, 85-87 (1st Cir. 2003).

The post-conviction court also made some relevant general factual observations about defense counsel's performance:

> In review, the court finds that [defense counsel] made multiple unsuccessful efforts to contact and consult with the defendant who was overly self-confident about his defense. Nevertheless, [defense counsel] attempted to develop a defense without petitioner's direct involvement by hiring a private investigator and obtaining an independent DNA analysis that confirmed the finding of the Maine State Police Crime Lab.
> [Defense counsel] has been practicing in Maine for more than ten years….He has an active trial oriented practice with approximately fifty percent of his practice devoted to criminal defense. He has appeared before this court on numerous occasions, including in his role as defense attorney at trial in this case.
> At trial on this matter, notwithstanding [the] failure of petitioner to maintain contact with him, [defense counsel] was well-prepared and advanced all appropriate defenses.

(Post-conviction Dec. & J. at 3.) The state post-conviction judge further noted: "In addition to not maintaining contact with counsel during the pretrial status of the case, the petitioner failed to appear at court at the call of the trial list. Although his attorney was fearful that he would not appear for trial, he was there. After jury selection, [defense counsel] instructed Howze to call his office that day, but he did not. He did talk with the defendant immediately prior and during trial." (Id. at 4 n.2.)

The Maine Law Court issued an order denying a certificate of probable cause on November 2, 2010. (See State Court Record App. D.)[3]

---

[3] In the memorandum in support of his certificate of probable cause Howze, through counsel, thoroughly addressed the claims presented in this 28 U.S.C.§ 2254 petition. (See id.)

5

B.     *Howze's 28 U.S.C. § 2254 Ineffective Assistance of Counsel Claims*

Briefly, Howze's four ineffective of assistance of counsel claims are: One, counsel failed to identify or interview several defense favorable witnesses; two, counsel failed to spend adequate time with Howze to prepare for trial, to explain his right to testify, or explicate his right to a jury-waived trial; three, counsel did not properly utilize Howze's DNA expert; and, four, counsel did not adequately cross-examine the crime-lab forensic chemist. The third and fourth grounds are discussed together because they substantially overlap.

*Identification and interviewing of potential witnesses (Ground One)*

The first 28 U.S.C. § 2254 ground that Howze advances is that his attorney was informed by Howze of the possibility of calling certain witnesses but failed to do so. "The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. The witness may not testify as anticipated, or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused." See Lema v. United States, 987 F.2d 48, 54 -55 (1st Cir. 1993) (citation omitted); see also Owens v. United States, 483 F.3d 48, 69 (1st Cir. 2007); Horton v. Allen, 370 F.3d 75, 86 -87 (1st Cir. 2004); United States v. Porter, 924 F.2d 395, 397 (1st Cir. 1991).

Currently Howze seems particularly focused on the possibility, foregone, of calling as witnesses at trial Jesse Baum and the unnamed daughter of Barbara Baum. (Post-Conviction Tr. at 41, 52.) Barbara Baum is Jesse's mother who arrived on the scene when requested to do so by Kristin Quint (a witness at trial and Jesse's girlfriend), because of a domestic violence situation transpiring between the couple which preceded the alleged sexual assaults in the apartment

6

below. Howze emphasizes that Barbara Baum's daughter could have potentially testified that she saw a group including Howze and the victim "eating Burger King together the day after the incident when she came over to help move her brother's furniture." (Howze Reply at 1, Doc. No. 8.)

During the post-conviction hearing trial counsel explained that part of his strategic choice not to call Jesse Baum was that he would likely end up testifying that he was afraid of Howze as was the victim: "I thought if a jury heard that he – that someone else, a male, was afraid of my client, that that was gonna be the end of my defense that this lady had consented to sex." (Post-conviction Hr'g Tr. at 89.)

With regards to this challenge, the post-conviction court was presented with only the testimony of Jesse Baum and reasoned:

> The court is not satisfied that if Jesse Baum had been called as a defense witness that most of the testimony the petitioner seeks to offer would be admissible. Even if it were, it would be subject to substantial impeachment based on prior written and oral statements to Lewiston Police Detectives Brian O'Malley and Scott Bradeen. The choice by trial counsel … was a sound tactical decision based on the status of the case at the time. It is highly unlikely that th[e] testimony of Jesse Baum, if called, would produce a different result.

(Post-Conviction Dec. & J. at 3.) The court further reflected: "Regarding the missing witness, Jesse Baum, [defense counsel] stated that it was a strategic decision not to call him as a defense witness, and in hindsight, 'after hearing him testify [at the post-conviction hearing, counsel was] glad [he] did not call him." (Id. at 4.) Additionally the record evidence strongly suggested that Jesse Baum had been involved in a physical altercation with his girlfriend on the evening in question and that the victim and the two defendants left the apartment to avoid the violence. (Trial Tr. at 393.) It was a sound strategic decision not to call this witness in support of the defense at an acquaintance rape trial where the defense was that the sexual contact had been

7

consensual.  Baum's violence toward his girlfriend would have been highlighted even more had he testified and any testimony even arguably favorable to Howze might have been suspect.

The conclusion by the post-conviction court regarding the strategic decision is patently not an unreasonable application of Strickland based on the facts as found after a lengthy post-conviction hearing.  With regard to any potential witnesses other than Jesse Baum, Howze failed to develop a factual basis for his claims before the post-conviction court.  See 28 U.S.C. § 2254(e)[4] and in his 28 U.S.C. § 2254 pleadings he has not provided any meaningful showing of how calling these other witnesses could have turned the tide of his trial.  The fact that Barbara Baum's daughter might have testified that she saw the victim in the company of Howze and others the following morning, given the overall record of the trial, would have been of minimal use to the defense in a case of acquaintance rape of this nature.  So even if Howze had adequately developed this aspect of his claim in the post-conviction hearing he could not meet either the Strickland performance or prejudice prongs.

***Inadequate preparation for trial in terms of talking to Howze about trial, his right to testify, and his right to a jury waived trial (Ground Two)***

---

[4] Subsection (e) of 28 U.S.C. § 2254 provides:
(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
    (A) the claim relies on—
        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e).

It is Howze's second contention that his attorney did not inform him of his right to a jury-waived trial or explain the difference between a jury-waived trial and a trial by jury. (Howze Reply at 5.) He also faults his attorney for not sufficiently informing him of his right to testify – that is, not explaining the consequences of not testifying as the only witness that could challenge the victim's testimony. (Id.) He expands:

> When I followed the brief advice of my counsel I lost my only opportunity to present my side of the story in a case which essentially came down to the credibility of one of the two stories. The superior court suggest[ed] it was my lack of contact with counsel plus my overly self confident attitude that effected my defense. This is nothing more tha[n] thinly veiled excuses for the violations of his obligations as an attorney.

(Id.)

The post-conviction justice specifically opined as to this Sixth Amendment challenge:

> Although Howze failed to maintain contact with counsel, [defense counsel] did have sufficient time to talk with him during trial and prior to the defense part of the case. [Counsel] was concerned that Howze felt his defense was a "slam dunk;" but even if he believed this, he bears the burden to maintain contact and consult with counsel. He did not, and cannot now be heard to complain that counsel failed to adequately discuss the case with him.
> The decision to advise the petitioner not to testify was based on sound ground; that, because he lied to Detective O'Malley, it would not be a good idea to testify.

(Post-conviction Dec. & J. at 4.)

During the post-conviction hearing Howze allowed that his attorney had a conversation with him, albeit brief, about whether or not to testify and that Howze agreed that he would not testify. (Post-conviction Hr'g Tr. at 61-62.) As indicated above, the post-conviction court expressly found that Howze was purposefully incommunicado with his attorney during the lead-up to trial and was overly optimistic about his chances of convincing the jury that the sex was consensual. Howze's characterization of this as a thinly veiled excuse is, frankly, a thinly veiled example of self-denial.

After a review of the trial transcripts I am a little flummoxed how it would have furthered Howze's prospect of acquittal to proceed with a bench trial rather than a jury trial given the nature of the case; at least Howze has not articulated that theory in any meaningful manner. The post-conviction justice addressed this issue as follows:

> [Defense counsel] testified that he does not believe that he talked to Howze about a jury-waived trial; however, that is insufficient to provide relief. Howze was provided with a jury trial where the State had to overcome the presumption of innocence and convince twelve jurors beyond a reasonable doubt of his guilt. This is the ultimate protection of Constitutional Rights. Even with the nature of the evidence, it is highly unlikely that there would have been a different result.

(Post-conviction Dec. & J. at 4.) Given that this was the opinion of a jurist likely to preside over a bench trial and who heard all the evidence, enough said.

***Failure to properly utilize DNA expert (Ground Three) and failure to adequately cross-examine the crime lab forensic chemist (Ground Four)***

Howze's third 28 U. S.C. § 2254 complaint relates to what he saw as a possible avenue of using the evidence of a tampon removal prior to his sexual contact with the victim. It is Howze's assertion that if counsel had pursued this line of inquiry he could have created a doubt in the minds of the jury as to whether his contact with the victim was consensual or not. The theory is that it was the victim who voluntarily removed her own tampon prior to intercourse in contradiction to her testimony that Howze removed the tampon while she was pretending to be passed-out. (Howze Reply at 6-8.) Howze points out that there was menstrual blood under the victim's fingernails which could support this theory. His fourth and final dispute with counsel is a closely related concern about not adequately cross-examining the state's crime lab witness in an effort to prove that the physical evidence could be consistent with the victim removing her own tampon prior to sex, thereby supporting a jury conclusion that the sex was consensual. (Id.

at 8.) These two grounds are intermingled as they both relate to the probative value of the same evidence which goes to both the performance and the prejudice prongs of Strickland.

The trial transcript reveals that counsel did indeed attempt to travel the evidentiary path with the aim to persuading the jury that the intercourse was consensual. (See, e.g., Trial Tr. at 102-103 (victim)). The evidence was that no tampon was found. (Id. at 264-265, 313.)[5]

At the post-conviction hearing counsel testified that he never considered hiring a medical expert to address whether or not the victim could have had sex with the tampon in place with Howze's co-defendant indicating that the version of events that this was what occurred was bad for the State. (Post-conviction Hr'g Tr. at 91.) He explained,

> Well, here's … the bottom line on that. Our only defense was that Mr. Howze had had consensual sex with [the victim]. I could not argue that he did not have sex with her. And I thought the whole tampon evidence issue was – I thought pursuing that was more related to that – that how unlikely her story was that he had actually done this than it was related to consent. I thought it was a non-issue, 'cause I thought we had enough evidence to convince the jury that this lady had consented to sex with Mr. Howze. So, the tampon evidence was just one piece of that.

(Id. at 91-92.) He indicated that he believed that he had utilized this evidence sufficiently during the course of trial. (Id. at 92.) With regards to the blood under the victim's fingernails he does not recall considering the blood under the fingernails. (Id. at 83.) "What I remember doing," he relayed, "is sending the entire file, the labs results and everything, to the DNA expert I assumed they had that…" (Id.) The blood evidence was mentioned in the State Crime Lab report and his expert did not mention this as a possible defense. There was no other blood found at the scene which negated a theory that force was used. (Id. at 83-84.)

---

[5] With regards to Howze's co-defendant this concern had far more importance because it was the victim's trial testimony that the tampon was removed after their intercourse and before Howze's sexual contact. There was some testimony that suggested that the removal of the tampon between the assaults was responsible for the fact that the co-defendant's DNA did not show up during the investigation.

As noted above, the post-conviction court expressly remarked upon trial counsel's efforts to pursue independent DNA analysis but this analysis confirmed the findings of the Maine State Police Crime Lab. Like Howze's other salvos, these are not claims that survive 28 U.S.C. § 2254 review of the Strickland performance standard.

### *Additional observations of counsel's performance*

The record before me underscores some very important "X- factors" for counsel appointed to assist defendants in such cases. Whether or not Howze is actually, factually guilty of this assault is not what this court is reviewing. As Howze's attorney pointed out in his closing argument to the trial jury, there were significant inconsistencies in the victim's and other witnesses' testimony when compared to statements to the police and significant confusion about the timing of the events that might have supported a jury verdict in Howze's favor. Second guessing a jury verdict is not what 28 U.S.C. § 2254 review countenances unless there are very extraordinary circumstances which warrant federal relief from a state court conviction.[6] The scope of the analysis in Howze's case is limited to the deferential Strickland standard of review which is narrowed even further by the deferential 28 U.S.C. § 2254 review of the factual and legal conclusions that the state courts made vis-à-vis those Sixth Amendment claims.

In this case, reading the transcripts of the state court proceedings, it is clear to me that even without the lens of the 28 U.S.C. § 2254 overlay that defense counsel performed well within the Strickland parameters in not pursuing the additional witnesses and pressing further the tampon removal. With regards to the consultation between attorney and client on the pros and cons of a bench trial and testifying, these are the types of strategic decisions that are not reckless or, even, negligent given the circumstances of this case. Here is a client that admits that he was

---

[6] For instance, Howze does not now advance an exhausted insufficiency of the evidence claim.

reluctant to contact his attorney at key periods leading up to trial -- self-assured of his defense -- and who was apparently facing a homicide investigation in New York based upon DNA evidence at a time that these decisions were made apropos the Maine charges.[7] In his closing statement Howze's attorney made an impressive pitch apropos the victim's inconsistent reports about how the intercourse took place. (Id. at 468- 71.) As the post-conviction court noted: "As part of the defense, and considering the known evidence, the best available strategy was that any sexual act with the victim was consensual." (Post-conviction Dec. & J. at 4.) On the record before me there is no basis to conclude that the performance of counsel was anywhere near the Strickland borderline of ineffective performance much less that the state court's resolution was an unreasonable application of that standard on the facts developed in the post-conviction proceedings. See Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'")(quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

## Conclusion

For the reasons stated above I recommend that the Court deny Howze 28 U.S.C. § 2254 relief. I further recommend that a certificate of appealability should not issue in the event Howze files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c).

---

[7] (See Post-conviction Hr's Tr. at 34-35.)

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 21, 2011